## PURCHASE AND SALE AGREEMENT
### (MOA-Front Portion of the Mann Leiser Muldoon Estates)

Purchase and Sale Agreement (**"Agreement"**) dated the ___ day of March, 2006 (**"Effective Date"**), between Joe Bryant and Nada Mae Mortenson, as conservator of the Estate of Thomas Michael Cody IV (collectively, **"Seller"**), and the Municipality of Anchorage (**"Buyer"**).

1.  <u>Sale and Purchase.</u> Seller shall sell and Buyer shall purchase, subject to the terms and conditions in this Agreement, the westerly portion tract of land containing approximately 6.9 acres, described as:

    > The West 6.9 Acres, Tract B, Muldoon Estates Subdivision, Plat No. 71-113, located in the NE ¼, Section 24, T13N, R3W, Seward Meridian, Anchorage Recording District, Third Judicial District, State of Alaska (**"Property"**).

2.  <u>Purchase Price.</u> The purchase price (**"Purchase Price"**) for the Property shall be _Five Million_ Dollars ($ _5,000,000._ ), which may be adjusted for any variation in square footage from that specified in Paragraph 1.

3.  <u>Payment of Purchase Price.</u> The Purchase Price shall be payable in the following manner:

    a.  <u>Earnest Money.</u> Within Five business days after execution of this Agreement by both parties, Buyer shall deposit Five Thousand Dollars ($5,000) in earnest money into a trust account at Fidelity Title of Alaska ("**Title Company**"). At closing (**"Closing"**), as described in Paragraph 12, the earnest money shall be credited against the Purchase Price. Except as otherwise provided herein, Buyer is entitled to a full refund of the earnest money until Seller records a plat creating the tract described above as the Property.

    B.  <u>Balance of Earnest Money.</u> On April 5, 2006, an additional $95,000.00 will be deposited with the title company and shall become non-refundable with the signing of a full purchase and sale agreement. At closing the initial and additional earnest money shall be credited against the Purchase Price.

    C.  <u>Balance of Purchase Price.</u> The balance of the Purchase Price, _Four Million, five hundred Thousand_ Dollars ($ _4,700,200_ ), at

USA v. THREE PIECES OF REAL
PROPERTY et al.
Case No. 3:06-cv-00118
Exhibit C Page 1 of 15

the square footage listed above, shall be payable by Buyer at Closing.

4.  Due Diligence; Standstill. Buyer shall have 90 days from the Effective Date of this Agreement to complete any due diligence review (**"Due Diligence"**) it wishes to make on the Property. The opportunity of Buyer to make such reviews and/or actually making such reviews shall in no way diminish the liability of Seller for the representations, warranties, and indemnities of Seller in this Agreement or constitute a defense to Seller on such representations, warranties, and indemnities in the event of a breach, all of which provisions shall survive Closing as provided in Paragraph 11.

Buyer's Due Diligence may include, at Buyer's sole discretion, any and all issues, concerns, questions, investigations, examinations, and reviews regarding the Property it wishes to make, including any improvements Buyer may intend or contemplate making on or to the Property, and may include, but is not limited to, the items listed in subparagraphs *a.* through *n.* below. In addition, Seller shall, within ten days of the Effective Date of this Agreement, provide Buyer with the materials and items described in subparagraphs *a.*, *b.*, *f.*, *g.*, *h.*, *i.*, *j.*, *k.*, *l.*, *m.* and *n.* below for review, if such materials or items are in the possession of or reasonably available to the Seller:

a.  Any existing as-built or other surveys;
b.  Any existing plats;
c.  Current zoning and any information regarding possible zoning changes;
d.  All covenants, conditions, and restrictions on the Property;
e.  Any pending or final assessments of any type whatsoever;
f.  Preliminary Commitment for Title Insurance, exceptions, and underlying documents, all of which are subject to Buyer's approval;
g.  Any and all materials and reports relating to zoning, covenants, conditions, and restrictions, right-of-ways, availability of and presence of utilities, easements, and Property set backs;
h.  Any and all reports, inspections, or reviews pertaining to the Property or adjacent properties, including environmental, soils, and geotechnical assessments, whether in the possession of the Seller or Seller's Agents and/or performed pursuant to this Agreement;
i.  Any and all information contained in the files of the Alaska Department of Environmental Conservation regarding the Property;
j.  Any and all existing or claimed lease or rental agreements currently in effect, including all addenda, amendments, and options;
k.  Contracts and documentation for previous construction, improvements, installations, filling, excavations, grading, repairs, and maintenance performed on the Property;

l.    Any inspection reports relating to the Property;

m.    Any and all records relating to use of storage tanks, utility, and distribution lines, asbestos, PCBs, batteries, chemicals, and other Hazardous Materials that may have been or are currently located on the Property; and

n.    Any other information deemed pertinent by or requested by Buyer.

Property shall be taken off the market and Seller or its agents shall not negotiate for the sale or lease of this property during the 90-day Due Diligence period. Sellers shall cooperate with Buyer in providing access, any knowledge, and information as may be necessary to complete investigations on the property. Seller, however, shall have the right to accept back up offers on the subject property.

If Buyer, in its sole discretion, rejects the Property by written notice to the Seller, copied to the Title Company, for any reason whatsoever prior to the expiration of the Due Diligence period, Title Company shall, upon receipt, refund all earnest money to Buyer without further consent or notice to Seller, and this Agreement shall terminate and be of no further force or effect to the parties. If Buyer makes no objection at the expiration of the Due Diligence period, Buyer shall be deemed to have accepted the Property.

5.    <u>Right of Entry Prior to Closing</u>. Prior to Closing, and without further notice to Seller, the Buyer, Buyer's employees, consultants, and agents, shall have reasonable access to the Property for the purpose of conducting Due Diligence investigations, including taking samples, borings, geotechnical examinations, environmental examinations, and all other actions necessary or appropriate to complete the Due Diligence review. After the signing of the Purchase and Sale Agreement and following Due Diligence Buyer shall further have access to conduct site work necessary to relocate the stream and complete the creek bank restoration project.

Buyer shall indemnify and hold Seller harmless from all loss or damage Seller may suffer arising from any acts or omissions of Buyer, or Buyer's authorized employees, contractors, and agents, while upon the Property to conduct Buyer's Due Diligence.

6.    <u>Representations and Warranties</u>. Seller represents and warrants to Buyer that:

a.    During Seller's period of ownership, from the date of Seller's acquisition of the Property to the date of Closing under this Agreement ("Period of Ownership"):

i.  there have not been any apparent or latent defects created or resulting in or on the Property;

ii.  there has been no Release of Hazardous Substances (as those terms are defined in Paragraph 8) on, in, under, onto from offsite sources, or from the Property;

iii.  if there have been any underground or above ground storage tanks on the Property, whether in service or closed, abandoned, or decommissioned, the storage tanks have been removed in a manner in full compliance with applicable federal, state, and local laws, regulations, and requirements;

iv.  there have been no known, pending, or threatened environmental claims, law suits, agency proceedings, or other legal or administrative challenges concerning the Property, the operation of the Property, or any condition on the Property, and Seller has no knowledge (and no information which would put Seller on notice) of any such claim, litigation, proceeding, or challenge proposed or threatened by any person or entity, or otherwise anticipated by Seller;

v.  if there have been Hazardous Substances on or in the Property, whether contained in barrels, tanks, equipment (moveable or fixed), or other containers, deposited or located in land, waters, sumps or in any other part of the Property, incorporated into any structure on the Property; or otherwise existing on the Property, they will be disclosed to the Buyer;

vi.  the Property (and, to the best of Seller's knowledge, the adjacent property or other nearby property) has not been used for any industrial or commercial operation involving any Hazardous Substances including any sort of manufacturing, processing, or refining equipment, machinery, part or component, cleaning or degreasing; the sale, storage or transport of Hazardous Substances; providing of services which utilize Hazardous Substances; drilling, mining or production of oil, gas, minerals or other naturally occurring products; or any agricultural activities involving the use or storage of fertilizers or pesticides;

vii.  there have been no spills, discharges, releases, fills, deposits or emplacements of any Hazardous Substances on or near the Property;

viii.  no tanks, trucks or other vehicles containing Hazardous Substances have been loaded or unloaded on the Property;

ix.  there have been no asbestos-containing materials or lead paint installed in or affixed to any structure on the Property, nor

have such materials been stored or disposed of anywhere on the Property;

x. there have been no electrical transformers, fixtures, or other electrical equipment containing PCBs or other Hazardous Substances installed in, affixed to, or located on the Property;

xi. there have been no civil or criminal proceedings or investigations instigated at any time or now pending, nor have any notices, claims, demands, or orders been received, arising out of any violation or alleged violation of, or failure to comply with, any federal, state, or local law, regulation, or requirement applicable to the Property or its use, nor do any facts or circumstances exist that Seller might reasonably expect to form the basis for any such proceedings, investigations, notices, claims, demands, or orders;

xii. all improvements to the Property including utilities, have been installed and constructed in compliance with all applicable laws and pursuant to valid permits; and

xiii. the Seller and the Property has been in full compliance with all federal, state, and local laws, regulations, and requirements applicable to the Property and its use including health, safety, environmental, zoning, and land use laws.

b. Seller has no knowledge of any structures or improvements on adjoining property which encroach onto the Property, nor any knowledge of structures or improvements on the Property which encroach onto adjoining property; and

c. Seller has no knowledge of any easement or other interest in the Property other than those that appear of record.

If Seller discloses in the affirmative to any one or more of the prior subparagraphs, such disclosure(s) is detailed with specificity and signed by Seller, on **Appendix A** hereto.

_____                _____, _N.M. for_
(Buyer's initials)    (Seller's   _Tom Cody_
      initials)

7. Indemnity:

a. Seller shall defend, protect, hold harmless, and indemnify Buyer from and against any and all losses, claims, damages, penalties, fines, investigations, assertions, liens, demands, and causes of action of every kind and character arising out of or related to an

Environmental Event.

b.  Seller's obligations to defend and indemnify shall include, without limitation, the obligation to undertake any remediation project, and to undertake the defense of any and all costs of removal action, remedial action, other "response costs" (as that term is defined under applicable federal state and local law), reasonable attorney's fees, penalties, fines, damages, interest, and administrative/court costs incurred by the Buyer in response to and defense of such regardless of the basis of liability alleged by or against any party, including strict liability under AS 46.03.822 or federal law. In the event Buyer is required to undertake any actions to remedy any environmental contamination or release of Hazardous Substances on the Property as a result of an Environmental Event, then Seller shall reimburse and indemnify Buyer for all costs and expenses incurred in doing so, including legal fees, costs of consultants and contractors, civil penalties, and other costs incurred as a result of the remediation of or response to any action, proceeding, or other claim related to the Property.

8.    <u>Definitions</u>. The following terms are defined as follows for purposes of this
       Agreement:

   a.    ***Environmental Event*** shall mean any assertion or claim made
          against the Buyer or any department, division or agency of it, Seller
          or any third party by any government agency or third party alleging
          the Release of Hazardous Substances or environmental
          contamination of any kind on or in connection with the Property that
          have arisen from activities occurring directly or indirectly in
          connection with the Property during the Period of Ownership, as
          defined in Paragraph 6, as well as the personal injury or loss to
          persons caused by:

      (1)    the presence of Hazardous Substances on the Property
             resulting from events, actions or inactions during the Period
             of Ownership; or
      (2)    the migration to adjacent properties, either before or after the
             Closing Date, of a Release of Hazardous Substances or
             environmental contamination of any kind on or in connection
             with the Property during the Period of Ownership.

   b.    ***Hazardous Substance*** shall include

      (1)    pollutants or substances which are or become regulated under
             any federal, State or local statute, ordinance, rule, regulation
             or other law now or hereafter in effect pertaining to
             environmental protection, contamination, or cleanup
             (including the Comprehensive Environmental Response,
             Compensation, and Liability Act of 1980 ["CERCLA"], 42
             U.S.C. §§ 9601 *et seq.*, as amended by the Superfund
             Amendments and Reauthorization Act of 1986, PL 99-499;
             the Hazardous Materials Transportation Act of 1994, 49
             U.S.C. §§ 5101 *et seq.*; the Toxic Substance Control Act, 15
             U.S.C. §§ 2601 *et seq.*; the Resource Conservation and
             Recovery Act of 1976, as amended, 42 U.S.C. §§ 6901 *et
             seq.*; the Federal Water Pollution Control Act, 33 U.S.C. §§
             1251 *et seq.*), and in the rules and regulations adopted and
             guidelines promulgated pursuant to such provisions, which
             are defined as "hazardous waste," "hazardous substances,"
             "hazardous materials," "pollutants," "contaminants," or "toxic
             substances";
      (2)    substances controlled by the laws of the State of Alaska as

> hazardous substances, petroleum products, waste or materials, including those defined in AS 46.03.826(5) and AS 46.03.900 (9); and
>
> (3)   asbestos-containing materials or any petroleum products or derivatives.

   c.   ***Release*** shall mean releasing, spilling, leaking, pumping, pouring, flooding, emitting, emptying, discharging, injecting, escaping, leaching, disposing, or dumping, whether directly onto the Property or flowing onto the Property from offsite sources.

9.   <u>Conditions to Obligation of Buyer to Close on Purchase.</u> The obligation of the Buyer to close on this Agreement is expressly contingent on the following:

   a.   The Property is in the same physical condition at time of Closing as it is at the time of execution of this Agreement;

   b.   The property appraisal meets or exceeds the purchase price;

   c.   Buyer has approved the preliminary Commitment for Title Insurance, all underlying documents related to the preliminary Commitment for Title Insurance, the title to the Property, and the title insurance policy proposed to be issued at Closing;

   d.   The Seller has subdivided and re-platted the Property, at Seller's expense, and has recorded the plat creating the Property;

   e.   The purchase meets all Municipal Charter and Code requirements, and acquisition has been approved by the Anchorage Parks and Recreation Commission and the Anchorage Assembly;

   f.   All representations, warranties, and agreements made by Seller in this Agreement and in the Closing documents are true as of the time of Closing; and

   g.   There is no legal action filed or known to either party to be threatened against the Property, the Buyer, or the Seller with regard to the Property or this transaction.

10.   <u>Title Insurance and Deed.</u> As a condition to Closing, the Title Company shall be able and willing to issue to Buyer title insurance in the amount of the Purchase Price and insuring marketable title to the Property, subject to no exceptions other than those Buyer specifies in writing to be acceptable (**"Permitted Exceptions"**). At Closing, Seller shall convey to Buyer by warranty deed, in form and substance acceptable to Buyer, marketable fee simple title to the Property, free and clear of any and all encumbrances, subject only to Permitted Exceptions. At Closing, Seller shall provide, at

Seller's expense, a Standard Form Owner's Title Insurance Policy
("**Policy**") issued by Title Company, insuring marketable fee simple title to
Buyer in the full amount of the Purchase Price and containing no exceptions
or conditions other than the Permitted Exceptions.

11.   Survival. All representations, warranties, and indemnities of Seller in this
      Agreement or in Closing documents shall survive Closing and shall not be
      deemed to have merged into the Closing documents nor in any way
      terminated, released, or waived by reason of the Closing or execution of the
      Closing documents.

12.   Closing. Closing and recording shall occur on or before 30 days from
      Buyer's waiver or satisfaction of all conditions set forth in this Agreement
      including the conditions specified in Paragraph 9 and title matters and
      contingencies specified in Paragraph 10, but no earlier than February 1,
      2008 ("**Closing Date**"), except by mutual agreement. Buyer shall have the
      right to extend the Closing Date for an additional 30 days by providing
      Seller with written notice of Buyer's election to do so on or before the
      Closing Date.

13.   Closing Costs. The respective parties shall be responsible for and pay the
      following Closing costs:

      a.   Seller shall pay the following Closing costs:

           (1)   Seller's own preparation costs for this Agreement;
           (2)   All recording and preparation fees for documents required to
                 remove or amend title exceptions to be removed for Closing;
           (3)   One-half the recording fees not described in (2) above;
           (4)   Costs of the Preliminary Commitment for Title Insurance and
                 the Standard Form Owner's Title Insurance Policy;
           (5)   Any and all taxes due;
           (6)   Any outstanding or pending assessments;
           (7)   Its own attorney's fees;
           (8)   Its real estate brokerage fees; and
           (9)   One-half the Closing escrow fees.

      b.   Buyer shall pay the following closing costs:

           (1)   One-half the conveyance document preparation fees (not
                 including document preparation fees to remove or amend title
                 exceptions to be removed for Closing) and all its own
                 preparation fees for this Agreement;

(2)     One-half of all conveyance recording fees (not including recording fees to remove or amend title exceptions to be removed for Closing);

(3)     Its own attorney's fees;

(4)     Its real estate brokerage fees, if any;

(5)     One-half the Closing escrow fees; and

(6)     That portion of the title policy fee in excess of the cost of the Standard Form Owner's Title Insurance required to obtain an ALTA policy, if Buyer so elects.

14.     <u>Proration.</u> Real property taxes (but not interest or penalties on them), shall not be prorated. All assessments, whether general or special, assessed prior to the Closing Date, including balances payable in installments which are not yet due, shall be paid in full by the Seller before or at Closing. No taxes, penalties, interest, assessments, balances, claims or liens shall remain due on the Property after Closing.

15.     <u>Brokerage Fees</u>. Buyer represents and warrants it has not retained any real estate brokers and/or agents acting on its behalf in connection with this transaction. Each party agrees to indemnify and hold each other harmless from and against any claims by any real estate broker and/or agent claiming a commission or other form of compensation for representing and/or acting on behalf of the indemnifying party with regard to this transaction.

16.     <u>Default by Seller</u>. If Closing does not occur as provided herein for any reason other than Buyer's default, Buyer may exercise, at its option, any one or more of the following remedies:

a.     Require repayment of its earnest money;

b.     Rescind this Agreement and recover from Seller any and all damages and expenses paid or incurred by Buyer in connection with this Agreement and resulting from Seller's breach; and

c.     Bring an action for and be entitled to a judgment for specific performance without posting a bond.

17.     <u>Default by Buyer</u>. If Buyer defaults in the performance of any of the terms and/or conditions of this Agreement, Seller may rescind this Agreement and retain the earnest money paid by Buyer, which shall be the Seller's sole remedy in the event of Buyer's breach.

18.     <u>No Assignment.</u> This Agreement may not be assigned by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld.

19.   Notices. All notices and communications required or permitted under the terms of this Agreement or by law shall be in writing and delivered personally to the party intended or shall be sent by U.S. certified mail, postage prepaid and return receipt requested, to the appropriate party at the address specified in Paragraph 20. It is the responsibility of each party to this Agreement to promptly provide any changes of address to the other party for notice purposes; in the event a properly sent notice is returned undelivered, the notice shall nonetheless be effective.

20.   Addresses. For the purpose of notices regarding this Agreement, the addresses of

the parties shall be as follows, unless changed by a party in writing:

**BUYER:**                                        With copies to:

Municipality Of Anchorage                Municipality of Anchorage
Municipal Manager                           Attn: Executive Director
P. O. Box 196650                             Heritage Land Bank &
Real
Anchorage, AK 99519-6650               Estate Services
                                                        P.O. Box 196650
                                                        Anchorage AK 99519-
6650


                                                        Municipality of Anchorage
                                                        Attn: Municipal Attorney
                                                        Department of Law
                                                        P.O. Box 196650
                                                        Anchorage, Alaska 99519-
6550


**SELLER:**                                      With copies to:

Joe Bryant                                        Will Sherman, Attorney
Estate of Thomas Michael Cody IV    645 G Street, Suite 100 #
856
3705 Arctic Boulevard #1816             Anchorage AK 99501
Anchorage, Alaska 99503


21.   Costs and Attorney's Fees. If Buyer or Seller brings any action for relief
      against the other, declaratory or otherwise, arising out of this Agreement,
      the prevailing party shall be entitled to all its costs and reasonable attorney's
      fees.

22.   Time of the Essence. Time is of the essence for performance by the parties
      under this Agreement.

23.   Entire Agreement and Modification. This Agreement, together with any
      attachments to it and other documents referenced therein, sets forth the
      entire agreement and understanding of the parties in respect to the
      transactions contemplated under this Agreement, and supersedes all prior
      agreements, arrangements, and understandings relating thereto. No

modification of this Agreement shall be effective unless in writing and signed by Seller and Buyer, or their authorized representative(s).

24.  <u>Successors.</u> All of the covenants, agreements, terms, and conditions contained in this Agreement shall apply to and are binding upon Buyer and Seller, and their respective successors, representatives, heirs, and permitted assigns.

25.  <u>Counterparts and Facsimile Signatures.</u>  This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall be deemed a single document.  Signatures on this Agreement forwarded by facsimile are intended to be the equivalent of original signatures, with the original executed Agreement thereafter to be provided promptly to the other party.

The parties have executed this Agreement as of the Effective Date specified at the beginning of this Agreement.

**BUYER:**
MUNICIPALITY OF ANCHORAGE

**SELLER:**

By: _____

    DENIS C. LeBLANC,

JOE BRYANT

    Municipal Manager
    Municipality of Anchorage
MICHAEL

ESTATE OF THOMAS

CODY IV

By: _Nada Mae Mortenson_

_____
Conservator _for Thomas M. Cody IV_

Nada Mae Mortenson,

STATE OF ALASKA          )
                         )ss.

THIRD JUDICIAL DISTRICT    )

The above document was acknowledged before me this ____ day of
_____, 2006 by DENIS C. LeBLANC, Municipal Manager of the
Municipality of Anchorage, an Alaska municipal corporation, on its behalf.

_____

Notary Public in and for Alaska
My commission expires: _____

_____

_____

STATE OF ALASKA                )
                               )ss.
THIRD JUDICIAL DISTRICT    )

The above document was acknowledged before me this 4 day of
April ____, 2006 by Joe Bryant.

_____                                    _____

_____                                    Notary Public in and for Alaska
                                           My commission expires: 1/30/08

STATE OF MINNESOTA            )
                               )ss.
Anoka County                   )

USA v. THREE PIECES OF REAL
PROPERTY et al.
Case No. 3:06-cv-00118
Exhibit C Page 14 of 15 ____

The above document was acknowledged before me this 3rd day of
April, 2006 by Nada Mae Mortenson, as conservator of the Estate of
Thomas Michael Cody IV.

CHRISTINE A. McCLELLAN
Notary Public
Minnesota
My Commission Expires January 31, 2011

_____

Minnesota

_____

_Christine A. McClellan_

Notary Public in and for

My commission expires: 01/31/2011

G:\Hlb\Robin\Offers & Agreements\Purchase and sale agreement for Leiser (Muldoon) Parcel II.doc