NELSON P. COHEN
United States Attorney

JAMES BARKELEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-3699
Fax: (907) 271-1500
Email: jim.barkeley@usdoj.gov
Alaska Bar No. 8306019

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cv-118-RRB |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN SUPPORT OF** |
| v. | ) | **JOINT APPLICATION FOR ORDER** |
| | ) | **STAYING FORECLOSURE ON** |
| THREE PIECES OF REAL | ) | **DEFENDANT REAL PROPERTY** |
| PROPERTY LOCATED AT | ) | |
| 1301 MULDOON ROAD, | ) | |
| ANCHORAGE, ALASKA 99504, | ) | |
| 1625 E. 64th AVENUE, | ) | |
| ANCHORAGE, ALASKA 99507, AND | ) | |
| NHN HILLCREST S/D 8 LOTS, | ) | |
| ANCHORAGE, ALASKA 99515, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

A.    **INTRODUCTION**

This motion involves only one of the parcels named as in rem defendants in this

1

action: 1301 Muldoon Road, more particularly described as Tract B MULDOON ESTATES, filed under Plat No. 71-113, Anchorage Recording District, Third Judicial District, Anchorage, Alaska ("the Muldoon property").

Because the record owners of the Muldoon property are dead (Bryant) and missing (Cody), they are not being prosecuted criminally. Because the government alleges that Cody and Bryant both used and purchased/maintained the Muldoon property in connection with the international marijuana trafficking conspiracy charged in Case No. 3:06-cr-041-RRB, the United States necessarily sued the Muldoon property civilly, in rem.

In November 2004, Alaska Greenhouses, Inc. ("AGI") sold the Muldoon property to Cody and Bryant, carrying paper back for approximately $1.3 million. In early 2006, Bryant and Cody's conservator purportedly granted the Municipality of Anchorage a right to purchase the Muldoon property.[1] After the government filed this forfeiture action in May 2006, AGI noticed up the default[2] of Cody and Bryant, directly contradicting this Court's primarily and exclusive in rem jurisdiction over the Muldoon property, and scheduled a non-judicial foreclosure sale for October 26, 2006.

The United States, Bryant's estate, Cody's conservatorship, and the Municipality of

---

[1]The Municipality is a claimant in this forfeiture action in two capacities: (1) purported purchase agreements with Bryant and Cody's conservator; and (2) via property tax lien.

[2]As indicated by Cody's joinder brief, Cody challenges whether default has occurred as alleged.

Anchorage all agree[3]: this Court should immediately stop the foreclosure sale in its tracks. In particular, the United States has a great deal to lose if the foreclosure is not stayed, because its inchoate right to assert the doctrine of relation back (to the year 2000, when the drug conspiracy began) would be extinguished.  See  United States v. Real Property at 2659 Roundhill Drive, Alamo, CA, 194 F.3d 1020 (9th Cir. 1999) ("Roundhill I").  The lesson of Roundhill I is that, under a $5 million purchase scenario, $2-3 million of allegedly forfeitable equity belonging to Bryant's estate and Cody's conservator could be lost, since there is no way that the United States can obtain a final decree of forfeiture for the Muldoon property within the next two weeks.  The harm to the United States is irreparable; the harm to AGI, as the Beneficiary under the Deed of Trust, is simply delay beyond October 26, 2006 in its lien payoff.  Every indication is that the delay will not be protracted, since the City is currently seeking authority to purchase the property for $5 million – after which certain remaining proceeds would constitute the substitute res in this case.

## B.    FACTUAL BACKGROUND

For purposes of this motion, the following chronology is relevant:

1.    The Deed Of Trust to the Muldoon property was recorded on November 23,

---

[3]There are several other parties who have filed Statements of Interest and Answers in this action.  However, many of their claims do not pertain to the Muldoon property; those which do are apparently grounded in claims for services which some how benefitted the property, which claims the United States intends to contest.  Because these claimants do not assert an ownership interest in the property, they are not an obstacle to any sale of the property.  For example, the undersigned has sought joinder in this Application from Charles Evans, counsel for Don Smith.  Mr. Smith contends that he has devoted considerable time and effort to the Muldoon property, which has increased its value.  Whether Mr. Smith's claim (assertedly $750,000 but now under negotiation for between $300,000 and $400,000) amounts to a lien or not, it can be paid from the proceeds of an interlocutory sale.  The existence of his claim in no way undermines this Application: the foreclosure should be stayed.

2004, providing AGI.as Beneficiary, and Joe Bryant and Thomas Michael Cody, IV as Trustors.  See Exhibit J to Claimant AGI's Motion For Summary Judgment (docket 38) at 13-17.

2.    According to the Municipality, Bryant and Cody's conservator entered into "letters of intent" and "purchase and sale" agreements in January and April 2006.

3.    On April 19, 2006, the Federal Grand Jury returned an Indictment in the related criminal case, No. 3:06-cr-041-RRB (docket 2).

4.    The United States filed a Verified Complaint For Forfeiture against the Muldoon property on May 19, 2006, alleging that the Muldoon property:

> a.    was property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, et seq., and is therefore subject to civil forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7); and

> b.    constitutes or was derived from proceeds traceable to a violation of 18 U.S.C. § 1956(a)(1)(B)(i), which is a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7), and is therefore subject to civil forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) .

Docket 1.

5.    On May 19, 2006, upon ex parte application by the United States, this Court signed an order granting the government's motion to file sealed affidavit in support of the Verified Complaint For Forfeiture, pending completion of the related ongoing criminal case.

Docket 8.

6.      On May 22, 2006, the United States recorded a Lis Pendens with the Anchorage Recorder's Office, giving notice of the United States' action to secure the judicial forfeiture of the Muldoon property.  Exhibit 2.

7.      On June 21, 2006, the Federal Grand Jury returned a Superseding Indictment in the related criminal case, No. 3:06-cr-041-RRB (docket 131).

8.      The Notice Of Default And Sale Deed Of Trust Foreclosure from Fidelity Title Agency of Alaska was recorded on July 28, 2006.  Exhibit 3.

9.      The Municipality, through counsel, has advised the United States of its intent to seek Assembly authorization for the purchase of the Muldoon property for $5 million. Exhibit 1.

## ARGUMENT

I.      **This Court Should Stay AGI's Foreclosure Efforts Because the United States Filed a Civil Forfeiture Action Against the Muldoon Property and Because Such a Stay Is Necessary to Preserve the Availability of the Property for Forfeiture.**

Under 18 U.S.C. § 983(j)(1)(A), Congress has granted this Court broad power to preserve the availability of real property for forfeiture.  It states:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, **or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture** . . . upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture. . .

18 U.S.C. § 983(j)(1)(A) (emphasis added).

Despite directly mentioning several methods, Congress did not and could not purport to include an exhaustive list of every possible action a district court could take to "preserve the availability of property subject to civil forfeiture." Such an attempt would be highly impractical, if not impossible. Therefore, Congress provided some suggestions and explicitly authorized the district courts to "take any . . . action to seize, secure, maintain, or preserve the availability of property subject . . .to civil forfeiture," once the United States has filed a civil forfeiture complaint. 18 U.S.C. § 983(j)(1)(A). Congress intended this provision to apply to the various unanticipated threats to federal law enforcement concerning civil or criminal forfeiture.

AGI's foreclosure efforts present just such a threat. At a foreclosure auction, AGI would have no incentive to pursue a sale price even one dollar higher than its current lien balance (other than, for example, relatively minor amounts for costs and attorneys fees). Under the distress and intensity of sale conditions associated with foreclosure auctions, AGI might even settle for less than its mortgage balance, although that balance may be substantially less than the Muldoon property's fair market value. Therefore, such an auction would carry a substantial risk of destroying the net equity of the Muldoon property.

By contrast, if the United States sells the Muldoon property pursuant to a final decree of forfeiture or by an interlocutory sale, a stipulation for which is already under discussion and being drafted by the parties, the United States would have a strong incentive to market

the property, obtain the highest possible purchase price, and generate forfeitable net proceeds after the satisfaction of any valid claims. In this way, the United States could realize net forfeitable proceeds from the sale.

The "party seeking a preliminary injunction must fulfill one of two standards, described in [the Ninth Circuit] as 'traditional' and 'alternative.'" Burlington v. Department of Revenue, 934 F.2d 1064, 1074, n.6 (9th Cir. 1991), quoting Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional standard, "a court may issue a preliminary injunction if it determines: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and . . . (4) the public interest favors granting relief." International Jensen v. Metrosound U.S.A., 4 F.3d 819, 822 (9th Cir. 1993); citing Cassim, 824 F.2d at 795. "Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Cassim, 824 F.2d 795 (citation omitted). See also Elvis Presley Enterprises, Inc. v. Passport Video, 2003 WL 22510352 (9th Cir. 2003); Stuhlbarg International Sales Company, Inc. v. Brush and Company, Inc., 240 F.3d 832, 839-40 (9th Cir. 2001); Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000). "The alternative standards are not separate tests but the outer reaches of a single continuum." International Jensen, 4 F.3d at 822, quoting Regents of University of California v. ABC, 747 F.2d 511, 515 (9th Cir. 1984).

Under any formulation of this test, a partial showing of "success on the merits" has already been made; the United States has already filed an affidavit under seal in support its complaint in this action.  That affidavit outlines the contours and scope of the marijuana trafficking and money laundering involved.  So, too, does the Superseding Indictment.  The government contends that these documents, taken together, already constitute an adequate showing of likelihood of success on the merits, for purposes of enjoining a state non-judicial foreclosure which would forever (irreparable harm) "foreclose" the government from pursuing millions of dollars in allegedly forfeitable equity.

If this Court disagrees, and insists on a more particular showing of likelihood of success on the merits, the government is willing to offer ex parte, in camera evidence from the criminal case for that purpose.  However, the government respectfully suggests that this would be unnecessary, approaching a trial on the merits of the forfeitability of the Muldoon property.

Because a foreclosure sale would destroy the forfeitable equity in the Muldoon property, and because the alleged owners/Claimants and the Municipality concur in requesting a stay of the foreclosure action,[4] and because the parties intend to seek

---

[4]As briefed in joinder by Cody's conservator, allowing the October 26 foreclosure sale to occur could have a "chain reaction" effect upon the conservatorship, because two other defendant properties currently generate income for the conservatorship.  If that income dries up, two other defendant properties (the 64th Avenue Warehouse and Hillcrest S/D 8 Lots) would become subject to similar non-judicial foreclosure actions under the same Deed Of Trust.  Net equity in those two properties would then be similarly jeopardized.

interlocutory sale of the Muldoon property, this Court should prevent AGI from proceeding with the contemplated foreclosure sale under 18 U.S.C. § 983(j)(1)(A).

**II.    This Court Should Stay AGI's Foreclosure Efforts Because AGI's Threatened Foreclosure Action Impinges Upon This Court's Prior and Exclusive In Rem Jurisdiction over the Muldoon Property.**

Under Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 194-95, 55 S. Ct. 386, 389 (1935), and its progeny, the first court to take in rem or quasi in rem jurisdiction over property has exclusive jurisdiction over that property, superior to the jurisdiction of any court in which a subsequent in rem proceeding might be commenced. The Ninth Circuit explicitly adopted the holding of Penn General. "A common-law rule of long standing prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1145 (9th Cir. 1989) (citations omitted). The Ninth Circuit also explained Penn General's rationale. "The purpose of the rule is the maintenance of comity between courts; such harmony is especially compromised by state and federal judicial systems attempting to assert concurrent control over the res upon which jurisdiction of each depends." One Cadillac Seville, 866 F.2d at 1145.

The Ninth Circuit reaffirmed the applicability of the doctrine of prior exclusive jurisdiction in State Engineer of Nevada v. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada, 339 F.3d 804 (9th Cir. 2003). "If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property *is withdrawn from the jurisdiction of the*

*courts of the other authority* as effectually as if the property had been entirely removed to the territory of another sovereignty." <u>State Engineer of Nevada</u>, 339 F.3d at 809 (emphasis in original), quoting <u>Palmer v. Texas</u>, 212 U.S. 118, 125, 29 S. Ct. 230, 232 (1909). "[P]roperty *could not be subject to two jurisdictions* at the same time. The first levy, whether it were made under the federal or state authority, *withdraws the property from the reach of the process of the other*." <u>State Engineer of Nevada</u>, 339 F.3d at 810 (emphasis in original), quoting <u>Hagan v. Lucas</u>, 35 U.S. (10 Pet.) 400, 403, 9 L. Ed. 470 (1836).

    This Court obtained <u>in rem</u> jurisdiction over the Muldoon property when the Verified Complaint For Forfeiture was filed and the Internal Revenue Service posted it. This Court's <u>in rem</u> jurisdiction was not preceded by any other similar process. Therefore, this Court has prior and exclusive <u>in rem</u> jurisdiction over the Muldoon property. Although AGI's threatened foreclosure sale may be non-judicial, it affects property and matters of which this Court has exclusive <u>in rem</u> jurisdiction. Because this Court clearly has <u>in rem</u> jurisdiction superior to that of any other court, that jurisdiction should extend to proceedings, though not formally filed in court, which transfer ownership interests and otherwise affect the title of the Muldoon property. Under 18 U.S.C. § 983(j)(1)(A) and its exclusive <u>in rem</u> jurisdiction, this Court should prevent AGI from proceeding with the contemplated foreclosure sale and encroaching upon this Court's jurisdictional basis because such prevention is necessary to preserve the equity in the Muldoon property for forfeiture to the United States.[5]

_____

    [5]Under <u>Roundhill I</u>, the Ninth Circuit provided: "Some courts have held that 28 U.S.C.A. § 2409a(b) precludes mortgagees from foreclosing on property that has been

**III.    This Court Should Stay AGI's Foreclosure Efforts Because a Stay of the Foreclosure Sale Is Required to Protect the United States from Irreparable Harm and Will Not Cause Substantial Harm to AGI.**

During the course of this action, AGI will enjoy a full and fair opportunity to assert its deed of trust interest in the Muldoon property.  If AGI's claim is upheld by this Court, its claim will be paid out of the proceeds of sale of the Muldoon property.  In the alternative, when the interlocutory sale to the Municipality occurs, valid liens, including AGI's lien, will be paid, and the net proceeds of the sale will be substituted in lieu of the real property pursuant to this Court's order.[6]

As noted above, there is a significant difference between the foreclosure auction that AGI seeks and a sale pursuant to an interlocutory order of sale or a final order of forfeiture by this Court because at a foreclosure auction, AGI will have no incentive to pursue a sale price higher than its current deed of trust balance.  On the other hand, if the United States sells the Muldoon property pursuant to a final order of forfeiture, or if the property is sold through the interlocutory order of sale, as contemplated, the property will be sold for the highest possible purchase price and thereby generate forfeitable net proceeds after the

---

seized by the government.  Id. at 1026, fn. 2, citing (*See, e.g.*, United States v. Parcel of Real Property Known as 708-710 West 9th Street, 715 F.Supp. 1323, 1327 (W.D. Pa. 1989); United States v. Real Property Constituting Approximately Fifty (50) Acres, 703 F.Supp. 1306, 1312 (E.D. Tenn. 1988); United States v. Real Property Titled in the Name of Shashin, Ltd., 680 F.Supp. 332, 335 (D. Haw. 1987).  *But see* In re Newport Savings and Loan Ass'n, 928 F.2d 472, 477-79 (1st Cir. 1991))."

[6]Even if the proposed $5 million purchase of the Muldoon property by the Municipality does not occur, the Court could authorize interlocutory sale to another buyer, resulting in prompt retirement of AGI's lien from the sale proceeds.

satisfaction of any valid claims.

This interlocutory sale would not harm AGI.  To the contrary, the proposed $5 million City of Anchorage purchase, or any United States' alternative effort to maximize the return on the Muldoon property would increase the likelihood that the sale of the property will generate enough proceeds to pay AGI's lien in full.  Certainly, a $5 million purchase would do so.

**IV.    This Court Should Stay Foreclosure Proceedings Against the Muldoon Property Until the United States' Interest Has Been Adjudicated Because of the Pending Related Criminal Case and This Civil Case Involving the Muldoon Property.**

The Ninth Circuit has suggested that a stay of foreclosure would be the proper procedure in cases such as this one.  See Roundhill I.  In Roundhill I, the mortgagee initiated foreclosure proceedings against real property after the United States filed a civil forfeiture complaint against the same property. 194 F.3d at 1023-24.  Not only did the United States fail to move to stay the foreclosure on its own initiative, it opposed the defaulting mortgagors' petition to stay the foreclosure.  Id.  The Ninth Circuit held that the private foreclosure of the property extinguished any junior liens to that property.  Id. at 1028.  By inference, the United States' failure to actively oppose the foreclosure precipitated the extinguishment of its interest, which could have been avoided by successfully moving to stay the foreclosure.[7]

---

[7]Further harm to the United States was caused by its pursuit of forfeiture in the wake of Roundhill I.  United States v. Real Property At 2659 Roundhill Drive, Alamo, CA, 283 F.3d 1146 (9th Cir. 2002) (government liable for attorneys fees in continuing to litigate forfeiture) ("Roundhill II").

As noted above, the filing of this civil forfeiture action alone justifies the stay of the foreclosure sale under 18 U.S.C. § 983(j)(1)(A).  The related criminal case involves allegations of drug trafficking, money laundering, and related offenses that support this forfeiture action.

The foreclosure sale should not occur; it should be stayed.  The interlocutory sale to the Municipality now under discussion, or any other such sale, and the substitution of the net sale proceeds in lieu of the Muldoon property will meet the needs of the United States and Claimants AGI, Estate of Joe Bryant, Estate of Thomas Cody, and the Municipality of Anchorage.

## CONCLUSION

This Court should stay foreclosure proceedings against the Muldoon property because: (1) a stay of the foreclosure sale under 18 U.S.C. § 983(j)(1)(A) is necessary to preserve the availability of the Muldoon property for forfeiture; (2) AGI's threatened foreclosure action infringes upon this Court's prior and exclusive in rem jurisdiction; (3) a stay of the foreclosure sale is required to protect the United States from irreparable harm and will not cause substantial harm or be prejudicial to AGI; (4) due to the related, pending criminal case and this civil forfeiture action, the United States's interest in the Muldoon property has not yet been adjudicated; and (5) an interlocutory sale (which would also be jeopardized by foreclosure) of the Muldoon property and the substitution of the remaining net proceeds in lieu of the Muldoon property would meet the needs of the respective parties.

The balance of both harm and equity tips in favor of the parties joining in this motion:

the legal successors to the owners, the prospective purchaser claiming through them, and the

United States claiming that some or all of the owners' interests are forfeitable.  AGI is merely

a lienholder which would suffer relatively minimal harm by not foreclosing on October 26,

2006.

Respectfully submitted this 16th day of October, 2006 in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/James Barkeley
JAMES BARKELEY
Assistant U. S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Rm. C-253
Anchorage, AK  99513-7567
Phone: (907) 271-3699
Fax: (907) 271-1500
Email: jim.barkeley@usdoj.gov
Alaska Bar No. 8306019