Will Sherman
645 G St., Suite 100
Anchorage, AK 99501
Tel:  (907) 277-1966
Fax: (866) 398-3561
wfs@lexalaska.com

Attorney for Nada Mae Mortenson and the Thomas M. Cody IV Conservatorship


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br><br>THREE PIECES OF REAL PROPERTY LOCATED AT 1301 MULDOON ROAD, ANCHORAGE, ALASKA 99504, 1625 E. 64th AVENUE, ANCHORAGE, ALASKA 99507, AND NHN HILLCREST S/D 8 LOTS, ANCHORAGE, ALASKA 99515,<br><br><br>                Defendants. | Case No. 3:06-cv-118-RRB<br><br><br><br><br>**QUALIFIED JOINDER IN JOINT APPLICATION FOR ORDER STAYING FORECLOSURE ON DEFENDANT REAL PROPERTY** |

Nada Mortenson, Conservator for the Thomas M. Cody IV

Conservatorship, has joined in the United States' Joint Application for Order

Staying Foreclosure on Defendant Real Property.  Along with the reasoning set

forth in the United States' Memorandum, Mrs. Mortenson offers the following

**QUALIFIED JOINDER**                              - 1 -

additional argument in support of staying Alaska Greenhouse, Inc.'s ("AGI")

foreclosure and sale of 1301 Muldoon ("Property").

## I.    This Court has Authority and Responsibility to Stay the Foreclosure

A District Court may rightfully stay the foreclosure of property subject to

forfeiture or require the claimant post a bond equal to the Government's potential

interest in the property.  In re Newport Sav. and Loan Ass'n v. Real Property

Located at 185 Hargraves Drive, 928 F.2d 472, 480 (1st Cir. 1991).  Accordingly,

18 U.S.C. Section 985 explicitly recognizes "the authority of the court to enter a

restraining order relating to real property."  18 U.S.C. § 985(f)(3).

In Newport Savings, Judge Breyer framed the issue as "whether the district

court lawfully could refuse to permit an innocent lienholder, such as Newport, to

foreclose upon, and to sell, mortgaged property that the Government wants

forfeited, before forfeiture proceedings have concluded."  928 F.2d at 475.  The

court held that a court could rightfully block such a sale.  Id. at 480.  The decision

also noted a court might alternatively require the posting of a bond that would

cover the value of the Government's interest in the subject property.[1]  Id.

---

[1] Newport Savings relied upon 18 U.S.C. § 881(d).  The current 18 U.S.C. § 981(d), applicable to this case, almost identically states that the return of any seized property shall be governed by the "customs laws" of the United States.  The court further noted that customs statutes referring only to vehicles, goods, baggage, and similar movable items, nonetheless bring seizures of real property within their scope.  Id. at 479, (citing U.S. v. Parcel of Land and Residence at 28 Emery Street, 914 F.2d 1, 3 (1st Cir.1990)).  The customs laws set forth procedures for releasing such property upon the posting of a proper bond.  See 19 U.S.C. § 1614, et. seq.

Although the mortgagee in <u>Newport Savings</u> had already been adjudged an "innocent owner," with a "non-forfeitable interest," (<u>Id</u>. at 476), AGI has attained no such status in this case.  At this point it is not even clear that AGI possesses a "non-forfeitable" interest in the Property.  The only way the Court can guarantee the Government will not be harmed by such a sale is to block it entirely.  And even were AGI's interest adjudged "non-forfeitable," the Government could still lose the difference between the value of the Property and whatever AGI raised at a foreclosure sale.  The Municipality of Anchorage ("MOA") has offered to purchase the Property for $5 million.  AGI's interest is approximately $ 1.4 million.  Thus, an appropriate bond for AGI to post might be the difference, or $3.6 million.  <u>Id</u>.

Unless AGI is willing to post a bond sufficient to cover the difference between the value of the Property and the value of its interests, this Court can, and should, stay the foreclosure.

---

Although the property in <u>Newport Savings</u> had been seized during the pendency of the forfeiture proceeding, this distinction from the present case is not material.  AGI's insistence on foreclosing and cashing out of this case is analogous to seeking return of seized property.  Also, under current forfeiture statutes, the United States has the ability to seize real property to prevent its *sale*.  18 U.S.C. § 985(d)(1).  It must first show, however, that "less restrictive measures such as a lis pendens, restraining order, or bond would not suffice" to protect its interests.   18 U.S.C. § 985(d)(2).  Here, the Government seeks such a restraining order to prevent the foreclosure.  Should this fail, the Government could presumably seize the Property to prevent its sale, placing it in the same position as the property in <u>Newport Savings</u>.

**QUALIFIED JOINDER**                     - 3 -

## II.    AGI Should Not be Allowed to Foreclose and Effectively Retake its Interest in the Property as it has not Established Itself an "Innocent Owner"

According to 18 U.S.C. Section 983(d)(6), a person with a lien or mortgage on the forfeitable property is an "owner" of that property.  Therefore, before exiting this action with its interest in the Property, AGI has the burden to prove it is an "innocent owner" by a preponderance of the evidence. 18 U.S.C. § 983(d)(1).

18 U.S.C. Section 983(d) requires a would-be "innocent owner" of a property interest in existence at the time of the illegal conduct establish that it:

(i) did not know of the conduct giving rise to forfeiture;  or
(ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

18 U.S.C. 983(d)(2)(A)(i)-(ii).  The Ninth Circuit, construing the similar predecessor statute, held that the policy behind the forfeiture statute "would be substantially undercut if persons who were fully aware of the illegal connection or source of their property were permitted to reclaim the property as "innocent" owners."  U.S. v. One Parcel of Land Known as Lot 111-B, 902 F.2d 1443, 1445 (9th Cir. 1990).

To date, AGI has not met its burden.  AGI has only proclaimed its innocence by filing a motion for summary judgment supported by the self-serving affidavits of its owners.  (3:06-cv-118-RRB, Doc. 38)  The United States has opposed this motion as premature, particularly as no discovery whatsoever has yet occurred in this case.  (Id., Doc. 40)

**QUALIFIED JOINDER**                - 4 -

Meanwhile, if even one of AGI's numerous corporate owners (they are claimed to number in the 40's) had any knowledge of the alleged drug activity connected with the Property, AGI could lose its "innocent owner" defense. One Parcel of Land, 902 F.2d at 1445. Thus it is possible that AGI's interest in the Property could be fair game for forfeiture. Allowing AGI at this early stage to turn its interest into cash and disappear from the proceedings would "undercut" the clear intent of Congress that claimants prove their innocence before recovering their property interests. 18 U.S.C. § 983(d).

As AGI has not yet established itself an "innocent owner," its property interest—the value of the Deed of Trust—should not yet be relinquished. AGI should not be allowed to convert its interest in the Property into cash via a foreclosure sale and then "take the money and run."

## III. The "Irreparable Harm" Likely to Result From the Foreclosure Will Involve More Than Just Loss of the Property

As the United States points out in its memorandum, foreclosure of the Property by AGI could deprive the United States of the entire $5 million the Property is currently worth. (U.S. Memo. at 6) But the United States, as well as Mr. Cody, stand to lose substantially more.

1301 Muldoon is but one of three valuable Anchorage properties the United States seeks forfeiture of in this proceeding. The Deed of Trust for 1301 Muldoon, on which AGI seeks to foreclose, also lists one of the other properties in this action as collateral—Lot 38, Dowling Subdivision, commonly know as 1625

E. 64th Ave.  (Deed of Trust, 3:06-cv-118-RRB, Doc. 12  at 1)  This property was recently valued at $2.3 million.  If AGI is allowed to foreclose based upon an alleged breach of the Deed of Trust, this valuable property is also fair game for AGI—and thus beyond the reach of the United States.

And it gets worse.  Approximately $2,400 of the monthly gross income Mr. Cody's Conservatorship receives from 1625 E. 64th Ave. is used to pay the monthly obligation on the third property at issue in this proceeding, NHN Hillcrest S/D 8 Lots ("Hillcrest").  Hillcrest was recently listed at $1.8 million.  Since the Government has seized virtually all of Mr. Cody's other assets (A06-CV-00153-RRB-JDR), the Cody Conservatorship has no other money available to make this monthly payment.  (Attached Declaration of Nada Mortenson ¶ 5)  Therefore, without the Hillcrest income, Mr. Cody will default on the Hillcrest mortgage.

Like a house of cards, the foreclosure of 1301 Muldoon could result in the loss of all of the properties sought by the United States in this case.   At that point, the "irreparable harm" climbs from several million to perhaps 7 or 8 million dollars.  Meanwhile, the only loss facing AGI is its inability to immediately convert its asserted interest in the Property into cash.  And further mitigating this minor loss, AGI may recover interest on this money for the brief amount of time it should take to close the sale to MOA.

## IV.    The Foreclosure Should be Stayed Because the Partners Have not Defaulted as AGI Claims and Foreclosure is Premature

AGI has declared Mr. Cody and the Estate of Mr. Bryant ("Partners") in default because the "quarterly interest only payment [was] past due as of the 23rd day of May, 2006, and that the seizure of this property . . . constitute[s] a default by the buyers under the Deed of Trust."  (Ans. of AGI ¶ IX, 3:06-cv-118-RRB, Doc. 12-11 at 5)  Neither of these alleged default conditions have occurred.  Therefore, AGI should not be permitted to foreclose at this time.

Under the terms of the Promissory Note for the Property, the Partners were obligated to make quarterly interest-only payments of $25,000 to AGI.  (Attached Decl. of Richard Noble ¶ 3)  There is no dispute that payments were current up to the time when the May 2006 payment was to have been made.  (Id. ¶ 4)  On Approximately May 20, 2006, Richard Noble, the Partners' real estate broker, met with Carole Benson and her husband, at the office of their attorney, Eugene DeVeaux.  (Id. ¶ 5)  Mr. and Mrs. Benson are both Officers of AGI and also signed the Deed of Trust on behalf of AGI.  On account of the turmoil surrounding Mr. Bryant's recent death and the pending sale of part of the Property to MOA for $1.3 million, Mr. Noble requested AGI suspend any payments due until the MOA sale closed.  (Id. ¶¶ 5,6)  AGI agreed to such forbearance.  (Id.)

Since no payment was due AGI on May 23, 2006, there could not have been a default on that date as a result of a missed payment.  It is currently in

dispute at what point in time, if ever, a default on the Deed of Trust occurred due to the interest payments.[2]

AGI also claims that "seizure of this property . . . constitute[s] a default by the buyers under the Deed of Trust." (Ans. of AGI ¶ IX, 3:06-cv-118-RRB, Doc. 12-11 at 5) The Property, however, has not been seized. Under 18 U.S.C. Section 985(b)(1)(A), real property that is the subject of a civil forfeiture action generally shall not be seized before entry of an order of forfeiture. The mere unproven allegation of wrongdoing is not a "seizure" and much less provides AGI any legitimate means to declare default and sell the Property. The Deed of Trust simply states that Buyers shall not "suffer or permit any act upon said property in violation of law." (Deed of Trust, 3:06-cv-118-RRB, Doc. 12 at 1) According to the United States Supreme Court, the Partners, to date, are presumed innocent of any such acts, and "actions that impinge upon this presumption are to be taken only when absolutely necessary." Holbrook v. Flynn, 475 U.S. 560 568-569 (1986). Thus, there is no established "crime-based" default.

Finally, it is worth noting that but for the forfeiture action, there would be no issue over the Deed of Trust. As of May 23, 2006, the date the payment waived by AGI would otherwise have been due, the Cody Conservatorship had at

---

[2] AGI may likewise not claim a default based upon the MOA tax lien. AGI was well aware that back taxes were owed on the Property. (Noble Decl. ¶ 8) AGI represented that it was not concerned about such back taxes as they would necessarily be paid as a condition to any sale of the Property, and because they were not directly costing AGI anything. (Id.) AGI thus waived any objection it had to the tax lien.

least $112,000 cash in its bank accounts, ample money to have kept the Property payments current to this day.  (Decl. of Nada Mortenson ¶ 3)  The only reason the May 23, 2006 payment was not made was because of assurances from AGI that it was not necessary to do so.  (Id.)

Several weeks later, however, the United States seized virtually all of Mr. Cody's remaining assets.  (Id. ¶ 5)  Since that time, the Conservatorship has lacked funds to make any of the payment AGI claims is necessary to redeem the Property. (Id.)

Since there is a dispute over whether a default has occurred, or at the least, at what point in time the alleged default may have occurred, the Court should not allow AGI to proceed with the slated foreclosure and sale.  Further, Mrs. Mortenson demands the opportunity to fairly litigate the contested default as part of the forfeiture proceedings.

## CONCLUSION

The Court should stay AGI's foreclosure and sale of the Property.


DATED, October 16, 2006, at Anchorage, Alaska

/s WILL SHERMAN
645 G St., Suite 100 #856
Anchorage, AK 99501
Tel:     (907) 277-1966
Fax     (866) 398-3561
e-mail: wfs@lexalaska.com
ABA #0205014

**QUALIFIED JOINDER**        - 9 -

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2006, a copy of this
document was served <u>electronically</u> by ECF upon:

James N. Barkeley     jim.barkeley@usdoj.gov,
katie.voke@usdoj.gov; joy.mcculloch@usdoj.gov;
kristine.o' neill@usdoj.gov; usaak.ecf@usdoj.gov

John R. Beard     jrbeard@alaska.net

David H. Bundy     dhb@alaska.net

Charles G. Evans     locge@gci.net

Robert P. Owens     uslit@muni.org

Frank V. Russo     Frank.Russo@usdoj.gov,

Robert Hans Schmidt     schmidtr@groheggers.com

And by <u>U.S. Mail</u> upon:

LeRoy E. DeVeaux
DeVeaux & Associates
701 W. 41st Avenue, Suite 201
Anchorage, AK 99503-6604

John Sutherland

Luella Sutherland

<u>s/ Will Sherman</u>
Certification Signature

**QUALIFIED JOINDER**