Will Sherman
645 G St., Suite 100
Anchorage, AK 99501
Tel:  (907) 277-1966
Fax: (866) 398-3561
wfs@lexalaska.com

Attorney for Nada Mae Mortenson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br><br>THREE PIECES OF REAL PROPERTY LOCATED AT 1301 MULDOON ROAD, ANCHORAGE, ALASKA 99504, 1625 E. 64th AVENUE, ANCHORAGE, ALASKA 99507, AND NHN HILLCREST S/D 8 LOTS, ANCHORAGE, ALASKA 99515,<br><br><br>   Defendants. | Case No. A06-CV-00118 RRB<br><br><br><br><br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR INTERLOCUTORY SALE OF HILLCREST PROPERTY** |

   Claimant Nada Mae Mortenson[1] has moved this Court to order the

interlocutory sale of one of the two remaining defendant pieces of real property

currently subject to forfeiture in this matter.  Having aggressively marketed this

---

[1] Mrs. Mortenson was formerly Conservator for the Thomas M. Cody IV Conservatorship.  Upon Mr. Cody being declared dead on August 15, 2007, control of his assets were transferred to the Executor of his estate, Mr. Christopher Messerli, who supports the proposed Hillcrest sale as evidenced by his signing the Purchase Agreement (Ex. 1).

property for several years, the current owners, the Estates of Thomas M. Cody and Joe Bryant have received what they consider a reasonable purchase offer for the Hillcrest Property for 1.1 million dollars. The Supplemental Rules For Certain Admiralty And Maritime Claims, G(7)(a) and (b) and E(9)(b), and 18 United States Code Section 983(j), applicable in this case, allow interlocutory sales by the parties who are in possession during forfeiture proceedings.

Ms. Mortenson's motion is being made in the assumption that all interested parties/claimants will support the contemplated sale, included the U.S. Government. The motion asks the Court to order the sale of the Hillcrest Property to Hallelujah Management, LLC for $1.1 million with closing instructions calling for the payoff of any legitimate lien holders and claimants, back taxes and sale commissions. These are all claims that would eventually need to be paid from any sale of the Property, even if the United States ended up with it via forfeiture.

The balance of the sale proceeds would be deposited with the Court Registry as the substituted *res* in these forfeiture proceedings. The forfeitability of the balance amount would remain for litigation and final disposition. Mrs. Mortenson's motion essentially requests the same action this Court granted in October, 2006, regarding one of the other of the three defendant pieces of real property, which has since been sold and converted to a substitute cash *res*.

## I. FACTS

The United States commenced this action on May 19, 2006, demanding forfeiture of the defendant real properties for their alleged involvement in, or

derivation from, illicit drug activities (dkt.1). These three properties were owned

in a 50-50 partnership by Thomas M. Cody and Joe Bryant, both of whom are now

deceased. Their respective estates now own the two remaining properties,

however the properties are encumbered by notices of *lis pendens* filed by the

United States in conjunction with this forfeiture action.

The parcel that is the subject of the attached motion ("Hillcrest Property")

is legally described as follows:

> All that lot or parcel of land, together with is buildings, appurtenances,
> improvements, fixtures, attachments, and easements, commonly known as
> NHN HILLCREST S/D 8 LOTS, Anchorage, Alaska 99515, more
> particularly described as:
> Parcel Number 1:
> Lots One (1) and Two (2), Block One (1), of Hillcrest Subdivision,
> according to Plat 70-136, filed in the Anchorage Recording District,
> Third Judicial District, State of Alaska; and
> Parcel Number 2:
> Lots One (1), Two (2), Three (3), Four (4), Five (5) and Six (6),
> Block Five (5), of Hillcrest Subdivision, according to Plat 71-118,
> filed in the Anchorage Recording district, Third Judicial District,
> State of Alaska.

This Property consists of 3.09 acres of highway frontage on the Old Seward

Highway across the street and approximately ¼ miles South of Wal-Mart.

The United States served notice upon all persons and entities believed to

have an interest in the Hillcrest Property by Certified U.S. Mail, Return Receipt

Requested, and notice of this judicial forfeiture action was published in the

Anchorage Daily News on June 22, June 29, and July 6, 2006.

The time to make claims in this case has long run, and to Mrs. Mortenson's knowledge, the only entities with claims in this matter applicable to the Hillcrest Property are as follows:

1.      Nada Mortenson (formerly Conservator for Thomas M. Cody, IV), filed a Statement of Interest on June 7, 2006 (dkt. 11) (claiming 50% ownership in the Property on behalf of Mr. Cody);

2.      Kelly Bryant (Personal Representative for Estate of Joe William Bryant), filed a claim on June 19, 2006 (dkt. 14) (claiming 50% ownership in the Property on behalf of Mr. Bryant's Estate);

3.      First National Bank Alaska, filed a claim on July 11, 2006 (dkt. 20) claiming a secured mortgage on the Property, which at that time was for approximately $180,000 owed;

4.      Donald and Luella Sutherland, filed a claim on July 12, 2006 (dkt. 29), claiming a lien on the Property for $6,039.41;

5.      Pacific Alaska Leasing, filed a claim on July 11, 2006 (dkt. 23), claiming it was owed approximately $219,121 for the Property; and

6.      Richard Noble, a real estate broker, filed a claim on August 1, 2006 (dkt. 33), claiming an interest in any sales commission generated by the sale of the Property, pursuant to a Listing Agreement with the Property's owners.

In conjunction with this forfeiture action, the United States seized all of Mr. Cody's cash assets.  (U.S. v. $46,911.64 in U.S. Currency, Et.al., Case No. A06-

CV-00153-RRB-JDR).  As such, Mr. Cody's Conservatorship (now his Estate) has

struggled to keep the payments up on his various properties.  In October, 2006,

this struggle reached a crisis when one of the then-three defendant parcels, the

Muldoon Property, faced imminent foreclosure.  At that point, this Court ordered

the interlocutory sale of that property to the Municipality of Anchorage for $5.1

million (dkt. 68).  The sale proceeds from the Muldoon Property were thus

deposited with the Court Registry and subsequently placed in U.S. Treasury Bills

(dkt. 75).

The Hillcrest Property, subject of this motion, is currently in arrears to the

Municipality of Anchorage for $17,986 in property taxes.  (Ex. 2)  The

commencement of foreclosure proceedings were only averted this summer when

the Cody/Bryant Estates paid off the 2005 tax bill.  Additionally, the property is

encumbered by mortgages of approximately $180,000 (First National Bank

Alaska, dkt. 20) and $219,121 (Pacific Alaska Leasing, dkt. 23).

The Hillcrest Property has been on the market since before Messrs. Cody

and Bryant died.  Immediately following Mr. Bryant's death in May, 2005, Ms.

Mortenson paid the remaining $5,000 on a $20,000 bill to Dean Architects to

complete preliminary design work for a mixed-use project on the Property that

was said to be necessary to its marketing.  (Ex. 3)  In June, 2007, the Estates

lowered the asking price to $1.5 million, based in part on the most recent

appraisal.  (Ex. 4)  That appraisal valued the Property "As-is" at $1.185 million

(*Id*).  Despite the marketing materials and lowered price, the Estates received no

offers until August, 2007, when Hallelujah Management, LLC offered $1.0 million.  (Ex. 5)  The Estates countered for $1.2 million subject to Court approval, which was accepted by the buyers.

After completing the initial, refundable phase of due diligence, Hallelujah discovered that the Municipality of Anchorage would require off-site improvements to allow development of the Property which included costly improvements to several adjacent roads.  (Ex. 6)  These required improvements had not been reflected in the most recent appraisal.  Hallelujah retained DOWL Engineers to estimate the costs of these improvements.  (Ex. 7)  DOWL came up with a cost of $675, 310 for the improvements required by the Municipality of Anchorage to allow commercial development of the Hillcrest Property.  (*Id*. at 16-18).

Hallelujah thus came back to the Estates with a renewed offer of $1 million to proceed with the sale contract.  The Estates countered with $1.1 million, which Hallelujah accepted.  (Ex. 1)  All counteroffers by the Estates have been made subject to U.S. Government and Court approval, which Ms. Mortenson now seeks through the attached motion.  Pursuant to the terms of the Purchase Agreement, Hallelujah has made a non-refundable $50,000 earnest money deposit on the and awaits only U.S. Government and Court approval to close on the purchase.

## II. ARGUMENT

From the outset, Ms. Mortenson stresses that she is not seeking an Order from this Court to "cram down" a sale on any unwilling parties.  The motion is

made on the assumption that all parties will approve of the sale.  Thus, Mrs.

Mortenson essentially seeks the Court's approval of the United States releasing the

notice of *lis pendens* on the Property, paying off all legitimate claims on the

property from the sale proceeds, and then placing the remainder in the Court

Registry, pending outcome of the underlying forfeiture proceeding.

**A.    This Court has the Statutory Authority to Order an Interlocutory Sale of the Hillcrest Property**

Three statutory provisions grant authority for a Court to order an

interlocutory sale of property that is subject to civil forfeiture prior to a final

adjudication on the government's forfeiture claim.

**1.    Supplemental Rules For Certain Admiralty And Maritime Claims**

The Supplemental Rules For Certain Admiralty And Maritime Claims

generally apply to civil in rem forfeitures. See 28 U.S.C. § 2461(b); United States

v. $506,231 in United States Currency, 125 F.3d 442, 449, n.5 (7th Cir. 1997).

Supplemental Rule A states:

> These rules also apply to the procedure in statutory condemnation
> proceedings analogous to maritime actions *in rem*, whether within the
> admiralty and maritime jurisdiction or not.  Except as otherwise provided,
> references in these Supplemental Rules to actions *in rem* include such
> analogous statutory condemnation proceedings.

Civil forfeiture actions are such "analogous statutory condemnation proceedings"

covered by the Supplemental Rules.  See United States v. All Right, Title and

Interest et al., 1996 WL 695671 at 5 (S.D.N.Y. Dec. 5, 1996); see also United

<u>States v. U.S. Currency in the Amount of $2,857</u>, 754 F.2d 208, 210 n.2 (7th Cir.

1984).

> Supplemental Rule E(9)(b) provides:
>
> (b) Interlocutory Sales; Delivery.
> (I) On application of a party, the marshal, or other person having custody of
> the property, the court may order all or part of the property sold–with the
> sales proceeds, or as much of them as will satisfy the judgment, paid into
> court to await further orders of the court–if:
> (A) the attached or arrested property is perishable, or liable to deterioration,
> decay or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property.
>
> (c) Sales; Proceeds. All sales of property shall be made by the marshal or a
> deputy marshal, or by other person or organization having the warrant, or
> by any other person assigned by the court where the marshal or other
> person or organization having the warrant is a party in interest; and the
> proceeds of sale shall be forthwith paid into the registry of the court to be
> disposed of according to law.

<u>See</u> <u>Berryhill Farm Estates</u>, 128 F.3d 1389-90 (motion for interlocutory sale filed

under Supp. R. E(9)(b); <u>United States v. 8 Princess Court</u>, 970 F.2d 1156, 1160

(2d Cir. 1992) (Supp. R. E(9)(b) authorized interlocutory sale).

Likewise, Supplemental Rule G(7) authorizes sales of property subject to

forfeiture, provided that the proceeds are deposited into the Registry of the Court

as substitute res subject to forfeiture in place of the property that was sold:

> (a) Preserving and Preventing Criminal Use of Property.  When the
> government does not have actual possession of the defendant property the
> court, on motion or on its own, may enter any order necessary to preserve
> the property, to prevent its removal or encumbrance, or to prevent its use in
> a criminal offense.
> (b) Interlocutory Sale or Delivery.
> (I) Order to Sell. On motion by a party or a person having custody of the
> property, the court may order all or part of the property sold if:

(A) the property is perishable or at risk of deterioration, decay or injury by being detained in custody pending the action;

(B) the expense of keeping the property is excessive or is disproportionate to its fair market value;

(C) the property is subject to a mortgage or to taxes on which the owner is in default; or

(D) the court finds other good cause.

(ii) Who Makes the Sale. A sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates.

(iii) Sale Procedures. The sale is governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures.

(iv) Sale Proceeds. Sale proceeds are a substitute res subject to forfeiture in place of the property that was sold. The proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action.

(v) * * * * * Supplemental Rule G(7)(b).  Supplemental Rule G is perfectly consistent with Supplemental Rule E on the issue of interlocutory sales of property.

## 2. Customs Laws

Other statutory authority for interlocutory sales is found in the customs statute, 19 U.S.C. § 1612(a). Section 1612(a) is incorporated with other pertinent customs statutes by 21 U.S.C. § 881(d), 18 U.S.C. § 981(d), and 18 U.S.C. § 2254(d) to the extent it is "applicable and not inconsistent" with those civil forfeiture provisions.  See United States v. One Parcel of Property Located at 414 Kings Highway, 128 F.3d 125, 127 n.2 (2d Cir. 1997) (19 U.S.C. § 1612 applies to forfeitures under 21 U.S.C. § 881).

## 3. Civil Asset Forfeiture Reform Act Of 2000

In addition to the explicit provisions above, 18 U.S.C. § 983(j), enacted as part of the Civil Asset Reform Act of 2000, also provides general authority for

interlocutory sales. Section 983(j) enables courts to take any "action to...preserve the availability of property subject to civil forfeiture." 18 U.S.C. § 983(j)(1).

**B. The Conditions For An Interlocutory Sale Are Present**

A number of the above-cited provisions support interlocutory sale of the Hillcrest Property. Chief among them, "good cause" to allow this sale if all involved parties support it, as well as the need to cure delinquent taxes.

**1. Good Cause**

Under Supplemental Rule G(7)(b)(D), the Court may allow the interlocutory sale if it finds "good cause" for such a sale. Assuming all the parties are in agreement, sale of the Hillcrest Property will pay off and thus eliminate all of the legitimate lien holder Claimants in this case, leaving only the Estates to litigate the forfeiture with the United States. This should greatly streamline that litigation and possibly facilitate early settlement.

There is also "good cause" in turning the real Property into a substitute *res,* as long as it is done at a fair and reasonable price. The proposed sale price of $1.1 million is fair and reasonable. The most recent appraisal valued the Property at $1.185 million. (Ex. 4) That appraisal, however did not take into account the additional off-site improvements of approximately $675,310 that the Municipality of Anchorage would require to develop the property. (Ex. 7) Thus, a sale at $1.1 million appears fair and reasonable, and would allow the parties to convert the Property to a substitute cash *res* for further litigation.

## 2. Delinquent Property Taxes

Supplemental Rule E(9)(b)(C) allows for interlocutory sale when "the property is subject to a mortgage or to taxes on which the owner is in default." The Conservatorship (and now the Estates), have had to bear the expense of the upkeep, mortgages and taxes on the defendant properties.  In light of the United States' claim for forfeiture of the properties, any money Ms. Mortenson (or the Bryant Estate) is forced to pour into the properties is hardly a sure investment.  If the United States prevails in the forfeiture actions, all the money Ms. Mortenson has spent just to keep the properties from foreclosure will essentially become a windfall for the United States and a loss to her or the Estate.[2]  This leaves the owners of the Properties, the respective Estates, in the odd position of having to invest money in Properties which they may well lose in their entirety, along with the money they have invested in such properties, just to maintain them for forfeiture.  On the other hand, should the Estates cease to pay the mortgages, taxes and other upkeep of the Property, the United States could likewise lose any potential interest in the Property, as it would presumably be foreclosed upon by "innocent owners," such as the mortgagors or Municipality of Anchorage.  The Hillcrest Property is currently almost $18,000 in arrears to the Municipality of

---

[2] In conjunction with this forfeiture action, the United States seized all of Mr. Cody's liquid assets, U.S. v. $46,911.64 In U.S. Currency, et. al., Case No. A06-CV-00153-RRB-JDR.  Therefore, Ms. Mortenson faces the prospect of negative estate assets.

Anchorage for property taxes.  Thus, Supplemental Rule E(9)(b)(C) applies to allow for interlocutory sale in this instance.

On a related note, under Supplemental Rule E(9)(b)(B), the Court may order an interlocutory sale where "there is an unreasonable delay in securing release of the property."  The United States commenced this forfeiture action in June, 2006.  Since Mr. Cody and Mr. Bryant were deceased at the time, they were never charged with any criminal wrongdoing.  The surviving alleged conspirators have been charged in 3:06-cr-00041-RRB, U.S. v. Ranes, et al.  Trials in that case are not scheduled until April, 2008, at the earliest.  In light of the pendant criminal proceeding, nothing of substance can transpire in this related civil forfeiture action until completion of the criminal trials.  Thus, the Estates must carry the burdens of the properties for perhaps 3 years before there can be any resolution.  This fact has already greatly increased the expense to the Estates and further leaves the properties vulnerable to foreclosure and loss.

## III. CONCLUSION

For the foregoing reasons, Ms. Mortenson requests that the Court order the sale of the Hillcrest property on the terms and conditions set forth in the proposed order submitted herewith, which essentially orders as follows:

1.      The defendant real property located at the Southeast Corner of Old Seward Highway and 92nd St., whose legal description is:

> NHN HILLCREST S/D 8 LOTS, Anchorage, Alaska 99515, more
> particularly described as:
> Parcel Number 1:

> Lots One (1) and Two (2), Block One (1), of Hillcrest Subdivision,
> according to Plat 70-136, filed in the Anchorage Recording District,
> Third Judicial District, State of Alaska; and
> Parcel Number 2:
> Lots One (1), Two (2), Three (3), Four (4), Five (5) and Six (6),
> Block Five (5), of Hillcrest Subdivision, according to Plat 71-118,
> filed in the Anchorage Recording district, Third Judicial District,
> State of Alaska,

shall be sold to Hallelujah Management, LLC, for a sale price of $1.1 million.

2.     Any and all administrative costs of the sale of the Hillcrest property shall

be paid and satisfied from the gross proceeds of the sale.

3.     Any and all liens, judgments or other claims specified by the Order shall be

satisfied from the gross proceeds of the sale including the First National Bank

Alaska lien and the Pacific Alaska Leasing lien and the claims made in this case

by First National Bank Alaska, Pacific Alaska Leasing, Donald and Luella

Sutherland and Richard Noble and related costs and fees and any delinquent

municipal real property taxes.

4.     The remaining net proceeds of the sale of the Muldoon property shall be

deposited into an interest-bearing account in the Registry of the Court, United

States District Court for the District of Alaska, and shall be substituted as the third

defendant in this action.

5.     Each party shall bear its own costs and fees, including attorney's fees

incurred in any stage of the ordered sale, other than those specified above.

DATED, January 4, 2008, at Anchorage, Alaska

/s WILL SHERMAN
645 G St., Suite 100 #856
Anchorage, AK 99501
Tel:    (907) 277-1966
Fax    (866) 398-3561
e-mail: wfs@lexalaska.com
ABA #0205014

**CERTIFICATE OF SERVICE**

I certify that on January 4, 2008, a copy of this document was served <u>electronically</u> by ECF upon:

James N. Barkeley    jim.barkeley@usdoj.gov, katie.voke@usdoj.gov; joy.mcculloch@usdoj.gov; kristine.o'neill@usdoj.gov; usaak.ecf@usdoj.gov

John R. Beard    jrbeard@alaska.net

David H. Bundy    dhb@alaska.net

Charles G. Evans    locge@gci.net

Robert P. Owens    uslit@muni.org

Frank V. Russo    Frank.Russo@usdoj.gov,

Robert Hans Schmidt    schmidtr@groheggers.com

And by U.S. Mail on January 4, 2008, upon:

Richard Noble
275 S. Hoyt St.
Anchorage, AK 99508

John Sutherland
Luella Sutherland
P.O. Box 671850
Chugiak, AK 99567

Gary E. Depue
1625 E. 64th #16
Anchorage, AK 99507

<u>s/ Will Sherman</u>
Certification Signature