

# Land Purchase and Sale Agreement

This form authorized for use ONLY by active Real Estate Licensee Subscribers of Alaska Multiple Listing Service, Inc.

Dated August 28th 2007    Brokerage Names    AK MLS ID #    Brokerage Ph
                          Listing Brokerage: United Realty, LLC.           9072721565
MLS# 06-12014             Selling Brokerage: Mark Ha, Jack White Commercial  9077625888

| Licensee Names | License # | Direct Ph | Fax Ph | Cell Ph | Home Ph |
|---|---|---|---|---|---|
| Listing 1: Dick Noble | | 9072721565 | 9072721566 | 9075299803 | |
| Listing 2: | | | | | |
| Selling 1: Mark Ha | | 9077625888 | 9077625858 | 9076327366 | |
| Selling 2: | | | | | |

**Licensee Relationships:**
The Seller and Buyer acknowledge the following:
a) Listing Licensee(s) ☒ is representing the Seller exclusively; or ❏ is assisting both the Buyer and Seller as a Neutral Licensee.
b) Selling Licensee(s) ☒ is representing the Buyer exclusively; or ❏ is assisting both the Buyer and Seller as a Neutral Licensee; or ❏ is representing the Seller exclusively.

1  1) Buyer(s), _____Hallelujah Management, LLC_____, hereby deposit(s) earnest money of
2        _____Ten Thousand_____ ($ 10,000.00 )Dollars
3     evidenced by: ❏ Cash ☒ Personal Check ❏ Cashier's Check ❏ Note, Due on August 28th 2007, (date)
4     ❏ Or_____
5     shall be held in trust by ❏ Listing Broker ❏ Selling Broker ☒ Other _____Stewart Title Agency_____
6     as earnest money on and part payment for the purchase of real property and improvements situated in
7     _____Anchorage_____ (city or area) 99507 (zip), in the _____Anchorage_____
8     Recording District, State of Alaska, described as:
9     _____ (Address)
10    _____Tr A Hillcrest Plaza Highway_____ (Legal) (the Property).
11
12    **Purchase Price:**
13    _____One Million_____ 00/100 ($ 1,000,000.00 )Dollars
14
15    Down Payment (including earnest money shown above) .......................... $ or % _____
16
17  2) **Terms:** *Check one below:*
18    a) ❏ **All Cash Offer:**
19       No loan is needed to purchase the Property; Buyer shall provide Seller written third-party documentation verifying
20       sufficient funds to close no later than _____(date)_____ (time).
21    b) ☒ **New Financing: Closing is contingent upon Buyer obtaining financing as follows:**
22       **Lender:** _____First National Bank of Alaska_____
23       i)   Buyer agrees to pay all fees and satisfy all conditions, in a timely manner, required by the Lender for process-
24            ing of loan application. Brokers and Licensees have made no representations as to availability of any loans or
25            interest rates. Buyer agrees that the interest rate offered by Lender is not a contingency of this Purchase
26            Agreement, so long as Buyer qualifies for the financing herein agreed.
27       ii)  Buyer to obtain loan commitment from Lender not later than Nov 30th 2007, (date).
28       iii) If Buyer fails to provide notice of inability to obtain loan commitment by such date and does not close, through
29            no fault of the Seller, Buyer shall be in default.
30       iv)  If Buyer is unable to obtain loan commitment from Lender by such date, through no fault of Buyer, Buyer to
31            provide written notice to Seller and this Purchase Agreement shall terminate automatically.
32    c) ❏ **Seller Financing:**
33       i)   $_____ payable at $_____, or more, per month including _____ % interest per annum
34            for _____ years, which shall include (check if applicable): ❏ a "Due on Sale" clause, and/or ❏ a "Right to Sue
35            Under the Note" clause.
36       ii)  Buyer shall provide Seller with Credit Report or other documentation, as required by Seller, verifying Buyer's
37            ability to purchase according to the price, terms and conditions of the Purchase Agreement by
38            _____, (date).
39       iii) Seller Financing is contingent upon the Seller's approval of the documentation from Paragraph 2c(ii) on or be-
40            fore _____, (date). In the event Buyer fails to obtain Seller's approval, this Purchase Agree-
41            ment shall automatically terminate.

Form 70117. Originated 09/06.
© 2006 Alaska Multiple Listing Service, Inc. (AK MLS) All rights reserved.    Page 1 of 5    _MK_/___  Buyer(s)    ___/___  Seller(s)

3) **Costs:**
If applicable, the costs shall be paid by Buyer (B) or Seller (S) as indicated below. Costs payable by both Buyer and Seller to be shared equally. **Buyer to pay for any fees due to requirements of the lender not covered below.**

| ITEM | B | S | ITEM | B | S | ITEM | B | S | ITEM | B | S |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Credit Report | X | | Escrow Closing Fee | X | X | Resale Certificate / | | | Assessments Levied | | X |
| Appraisal | X | | Bank Set-Up Fee | | | Public Offer Statement | | | Assessments Pending | | X |
| Atty Document Prep Fee | X | | Annual Escrow Fee | | | Soils Test | X | | DEC/MOA Filing Fees | | X |
| Recording Fee | X | X | Tax Service Fee | | | Corner Survey | | X | Sales Tax | | |
| Assume/Transfer Fee | | | Loan Origination Fee | X | | Flood Certification | | | Brokerage Fee | | X |
| HOA Fees | | | Owner Title Insurance | | X | | | | | | |

Buyer Acknowledges receiving copies of the following:     ☐ CCR's     ☐ Plat     ☐ Property Disclosure
   HOA Dues are: $ _____

4) **Funds At Closing:** Seller and Buyer agree before recording can take place, funds provided to the Closing Agent shall be in the following form: cash; interbank electronic transfer; money order; a certified check or cashier's check drawn on a financial institution located in the state; or any above combination that permits the Closing Agent to convert the deposit to cash not later than the next business day (AS 34.80.040).

5) **Recording/Possession:** This sale shall be recorded on __Dec. 30th 2007__, (date) or earlier by mutual agreement. Prior to recording, Buyer and Seller agree to sign all reasonably necessary closing documents and to perform the reasonable conditions required by the Closing Agent and Buyer's Lender.

6) **Prorations:** Property taxes, interest on loans being assumed, prepaid rents, and HOA fees, if applicable, shall be prorated as of the date of recording.

7) **Title/Survey:**
   a) The Seller shall convey title by statutory warranty deed or _____.
   b) Unless otherwise provided herein, this transaction is subject to Buyer's review and approval of a preliminary title report and copies of the exceptions it discloses showing the condition of title to the Property. Upon execution of this Purchase Agreement by all parties, Seller will, at ☒ Seller's ☐ Buyer's sole expense, promptly order the report and exceptions from __Stewart Title Agency__ (Title Company) and furnish them to Buyer. Upon receipt of the report and exceptions, Buyer shall have __five__ business days (five (5) if not filled in) within which to notify Seller, in writing, of any matters disclosed in the report which are unacceptable to Buyer. Buyer's failure to timely object, in writing, to any matters disclosed in the report shall constitute acceptance of the report. If, within __five__ business days (five (5) if not filled in) following receipt of the objections, Seller fails to remove or correct the matters identified in the objections, or does not give written assurances reasonably satisfactory to Buyer that they will be removed or corrected prior to the closing date this transaction shall automatically terminate. After closing, Buyer shall receive an owner's standard form policy of title insurance insuring marketable title in the Property to Buyer in the amount of the purchase price, free and clear of the objections and all other title exceptions agreed to be removed as part of this transaction.

8) **Documents Required By Law:**
   a) Buyer ☒ has ☐ has not received a copy of the **Alaska Real Estate Commission Consumer Pamphlet.**
   b) In the event a **Resale Certificate** or a **Public Offering Statement** is required by law for the transfer of this Property, it is hereby agreed that the time for the Buyer to review these documents begins at the date and time that the Buyer acknowledges in writing the receipt of these documents.

9) **Lot Size:** Any dimensions, square footage or acreage of the Property set forth in this Agreement are estimates, and may or may not be accurate. If lot dimensions or lot size is important to the Buyer, Buyer should independently determine such information.

10) **Utilities:** Buyer is hereby made aware that there may be cost incurred to connect utilities to subject property. No representation as to the availability or cost for actual utility services is made by Seller or Licensee or Broker.

**11) Property Condition:**
   a) Until the date of possession or recording, whichever is earlier, Seller agrees to maintain the Property in its current condition, subject to ordinary wear and tear.
   b) Buyer and Seller understand that Brokers and/or Licensees are not experts in the areas noted in Paragraph 11)e) and Buyer and Seller should rely solely on experts who are qualified in these areas. Brokers and/or their Licensees make no representations regarding the Property.
   c) Buyer shall have the right, at Buyer's expense, to have a licensed contractor(s) or other qualified professional(s) to further inspect and investigate the subject Property on or before __Oct    30th    2007__, (date) _____ a.m. __5:00__ p.m. (time). Buyer may terminate this Agreement and receive a return of the Earnest Money if Buyer notifies Seller or Listing Broker in writing before the end of the inspection period that Buyer is not satisfied with Buyer's inspection or investigation. If Buyer does not so notify Seller or Listing Broker of Buyer's termination of this Agreement before the end of the inspection period, Buyer shall be deemed to have waived this contingency.
   d) Seller shall make the premises available for all inspections. Buyer shall defend, indemnify and hold Seller, Brokers and Licensees harmless from all liability or property damage including any liens, claims, damages or costs or personal injury arising from the Property inspections. This indemnity includes Seller's right to recover all costs and expenses incurred by Seller to enforce this subsection, including Seller's reasonable attorney fees. This provision shall survive the termination of this Purchase Agreement.
   e) Buyer's inspection may include, but is not limited to: square footage, school boundaries, zoning, avalanche hazards, pests, structural, well (quantity/quality), soils, drainage, code compliances or possible environmental hazards, waste disposal sites, underground tanks, water contamination and/or other substances/products, etc.
   f) Except as otherwise specifically provided in this Agreement, Buyer accepts the Property AS IS, in its present condition, with all faults, latent or otherwise.
   g) Buyer shall, following any soil tests or other invasive examination, restore the property to its former conditon. All holes shall be filled, and any debris shall be removed.

**12) Termination:** In the event this Purchase Agreement is terminated as provided for in this Purchase Agreement absent a default by the Buyer, all earnest money shall be returned to the Buyer and all parties shall be relieved of their obligations as set forth herein.

**13) Time of the Essence and Remedies:** Seller and Buyer understand that time is of the essence. If any obligation is not performed or waived as provided, or if any note or check received as earnest money or any other payment is not paid, honored or tendered when due, there shall be the following remedies:
   a) **If Buyer is in Default:** Seller's remedies shall be limited to liquidated damages in the amount of the earnest money set forth in Paragraph 1 above. It is agreed that such payments and things of value are liquidated damages and are Seller's sole and only remedy for Buyer's failure to perform the obligations of this contract. The parties agree that Seller's actual damages in the event of Buyer's default would be difficult to measure, and the amount of the liquidated damages herein provided for is a reasonable estimate of such damages.
   b) **If Seller is in Default:** Buyer may elect to treat this Purchase Agreement as canceled, in which case all earnest money paid by Buyer hereunder shall be returned and Buyer may recover such damages as may be proper, or Buyer may elect to treat this Purchase Agreement as being in full force and effect and Buyer shall have the right to specific performance or damages, or both.

**14) Earnest Money Dispute:** Notwithstanding any termination of this Purchase Agreement, Buyer and Seller agree that, in the event of any controversy regarding the earnest money held by Broker, the Broker may:
   a) Make the determination as to the cause of the failure of this Purchase Agreement and distribute the earnest money accordingly, or
   b) Require the parties to execute an agreement for the release of the earnest money, in which case the earnest money shall be distributed in accordance with such agreement. If the parties are unwilling to execute an agreement for the release of earnest money, the parties shall submit the matter to mediation as provided below, and if mediation fails, the broker may file an interpleader action in a court of competent jurisdiction requesting the court to determine the distribution of the earnest money. Broker shall be entitled to an award from the earnest money of attorneys' fees and costs.

**15) Mediation:** If a dispute arises relating to this Purchase Agreement, between or among Buyer and Seller, or Broker(s) and/or their representative(s), and is not resolved prior to or after recording, the parties shall first proceed in good faith to submit the matter to mediation. Costs to be shared by mutual agreement between or among the parties. Unless otherwise agreed in mediation, the parties retain their rights to proceed to arbitration or litigation.

**16) Costs and Expenses:** In the event of any arbitration or litigation relating to this Purchase Agreement, the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorney fees.

Form 70117. Originated 09/06.
© 2006 Alaska Multiple Listing Service, Inc. (AK MLS) All rights reserved.    Page 3 of 5    __SK__ / ___  Buyer(s)   ___ / ___  Seller(s)

Instanet forms

17) **Broker:** It is mutually agreed by all parties that the Brokers and/or their Licensees shall not be held liable in any manner whatsoever for damages arising from defaults or acts by or omissions of Buyer or Seller.
   a) Both Buyer and Seller acknowledge Brokers are participants of the Alaska Multiple Listing Service, Inc., (AK MLS) and are authorized to report details of the sale to AK MLS.
   b) Buyer and Seller authorize any Lender, escrow agent, closing agent, appraiser, surveyor and any other related party to this sale to furnish and provide, on request or closing, any and all information and copies of documents related to this sale to both the Listing and Selling Brokers and their Licensees.

18) **Acceptance/Notice of Acceptance/Delivery:** This offer may be accepted by being signed by the other party with no changes, and such acceptance shall be effective when a complete copy of the fully signed agreement is delivered to the other party by any one of the following methods:
   a) Actual delivery to the other party or the other party's licensee;
   b) Via email to the other party or the other party's licensee, but only if the person transmitting the email receives electronic confirmation that the email was received by the intended recipient; or
   c) Via facsimile to the other party or the other party's licensee, but only if the transmitting fax machine prints a confirmation that the transmission was successful.

This Purchase Agreement may be signed in multiple counterparts with the same effect as if all parties signed the same documents. Delivery of a photocopy, telefax, electronic, carbon or carbonless copy of a signed original of this Purchase Agreement or any other documents referred to herein shall be treated the same as delivery of the original.

19) **Foreign Investment in Real Property Tax Act:** The Foreign Investment in Real Property Tax Act ("FIRPTA") requires every person who purchases real property located within the United States from a "foreign person" to deduct and withhold from the Seller's proceeds ten percent (10%) of the gross sales price, with certain exceptions, and to pay the amount withheld to the Internal Revenue Service. A "foreign person" includes a non-resident alien individual, foreign corporation, foreign partnership, foreign trust, and foreign estate. Seller and Buyer agree to execute and deliver, as appropriate, any instrument, affidavit or statement, and to perform any acts reasonable or necessary to comply with FIRPTA.

20) **Attachments:**
The following attachments are hereby made part of this Purchase Agreement:
_____
_____

21) **Additional Terms and Conditions:**

☐ See attached addendum for additional terms and conditions.

22) **Entire Agreement:** This Purchase Agreement and any attached addenda constitute the whole agreement between the parties.
   a) This document may not be modified except in writing and signed by the Parties.
   b) Buyer agrees to purchase and pay for the above-described Property on the terms and conditions herein stated. Receipt of a copy of this Purchase Agreement is hereby acknowledged. Buyer understands this is a legally binding contract. **Buyer agrees that closing of the sale will constitute an acknowledgment that the premises and its systems are acceptable at the time the sale is closed.**

**In the event the Seller or Seller's Licensee has failed to notify Buyer or Buyer's Licensee, of the Seller's signed acceptance prior to** __Aug   31st   2007__ **, (date) _____ a.m.** __5:00__ **p.m. (time), this offer shall terminate.**

This Purchase Agreement has significant legal and financial consequences. You are advised to seek independent legal and financial counsel, including tax advice from a tax attorney or CPA, before signing. The Brokers and Licensees cannot give legal, tax or financial advice.

Date ___August   28th   2007___ Time: ___2:45___ ___ a.m. _X_ p.m.

Buyer Signature(s)    E-mail Address    Office Ph(s)    Cell Ph(s)
                                        Home Ph(s)    Fax Ph(s)

1: _[signature]_    sksonemail@gmail.com    9072302026

2: _____

Print name(s) to be on documents    Hallelujah Management, LLC

Mail Address    16006 Seville Circle, Anchorage, Alaska 99516

Physical Address    Same

Name of Selling Broker's Office    Mark Ha, Jack White Commercial

Licensee Signature _[signature]_    Licensee Signature _____

**Brokerage Fee:**
A real estate broker may be compensated by any party to a real estate transaction, by a third party, or by one or more of the parties to the transaction splitting or sharing the compensation. Seller and/or Buyer agree to pay forthwith at closing a brokerage fee in cash as stated in the Personal Services Agreement. (i.e. Listing Agreement, Buyer's Agreement)

**Seller Response:** (check one)
- **Seller Acceptance.**
  - ❏ Seller accepts the foregoing offer as written. Seller agrees to sell and convey the Property described on the terms and conditions herein stated. Seller understands this is a legally binding contract.
- **Seller Rejection/Counter Offer.**
  - ❏ Seller hereby rejects the foregoing offer and declines to make a Counter Offer; or
  - ❏ Seller rejects the foregoing offer and makes the attached Counter Offer.

Date _____ Time: _____ ___ a.m. ___ p.m.

Seller Signature(s)    E-mail Address    Office Ph(s)    Cell Ph(s)
                                         Home Ph(s)    Fax Ph(s)

1: _____

2: _____

Print name(s) as shown on deed _____

Mail Address _____

Physical Address _____

Name of Listing Broker's Office    United Realty, LLC.

Licensee Signature _____    Licensee Signature _____

Form 70117. Originated 09/06.
© 2006 Alaska Multiple Listing Service, Inc. (AK MLS) All rights reserved.    Page 5 of 5    _SK_ / / Buyer(s)    / / Seller(s)





# ALASKA REAL ESTATE COMMISSION
# CONSUMER PAMPHLET

*About This Pamphlet:*

*In Alaska, a Real Estate Licensee is **required by law** to provide this pamphlet outlining the duties of a real estate licensee. After you have read the information contained in this pamphlet, please acknowledge receipt by signing **page 2** and return it to the real estate licensee who provided it to you. Your cooperation is appreciated.*

There are four different types of relationships established by Alaska Real Estate Law:

- Specific Assistance – Licensee owes "Duties owed by a Licensee in all Relationships" as described in this pamphlet.

- Representation – Licensee owes "Duties Owed by a Licensee when Representing a Party" as described in this pamphlet.

- Designated Licensee – This occurs when a Licensee represents or provides specific assistance to a party to a transaction and another Licensee within the same company represents or provides specific assistance to the other party in the same transaction.

- Neutral Licensee – This occurs when a Licensee does not represent either party but provides specific assistance to both parties in the same transaction. The parties must authorize the Neutral Licensee relationship by signing the "Waiver of Right to be Represented" form.

<u>Duties owed by a Licensee in all Relationships:</u>

- Exercise reasonable skill and care;
- Deal honestly and fairly;
- Present all written communications in a timely manner;
- Disclose all material information regarding the physical condition of a property;
- Account for all money and property received.

<u>Duties owed by a Licensee when Representing a Party:</u>

- Duties owed by Licensee in all relationships listed above;
- Not knowingly do anything that is adverse or detrimental to your interests;
- Disclose all conflicts of interests to you in a timely manner;
- If a matter is outside their area of expertise, advise you to seek expert advice;
- Not disclose confidential information, even after the relationship ends, from or about you without written permission, except under a subpoena or court order;
- Make a good faith and continuous effort to accomplish your real estate goals. However, once you have entered into a specific real estate transaction agreement, their efforts refocus on its successful completion.

Your Real Estate Licensee may also work with a variety of other clients (they represent) and customers (they provide specific assistance to) in different working relationships. In those situations, representing or providing specific assistance to other sellers, buyers, lessors, and lessees does not create a conflict of interest while working with you, or within the duties mentioned above.

Occasionally, as a Seller or Lessor, a situation may arise that your Real Estate Licensee also is representing another client (Buyer or Lessee) who then becomes interested in your property – or vice versa.

Prior to showing the property, the Real Estate Licensee must obtain a written approval to be a <u>Neutral Licensee</u> for both parties. A Licensee may not show property as a neutral licensee without obtaining your written consent entitled "Waiver of Right to Be Represented" and it will restate the duties outlined above <u>and</u> additional ones owed by your Real Estate Licensee. Alaska real estate law allows, but does not require, you to **Preauthorize** a Licensee to be a "Neutral Licensee." Having a different designated Licensee working for a seller or lessor and for the buyer or lessee in the same real estate transaction does not create dual agency or a conflict of interest for the real estate broker or for a Licensee employed by the same real estate broker.

## <u>THIS DISCLOSURE PAMPHLET IS NOT A CONTRACT</u>

08-4145 (Rev. 06/06)                -1-                                Initials _____ /_____

Duties **NOT** owed by a Real Estate Licensee

Unless agreed in writing otherwise, the following are the duties your Real Estate Licensee does not owe to you:

- To conduct an independent investigation of a property
- To conduct an independent investigation of anyone's finances
- To independently verify the accuracy or completeness of a statement made by a party to a real estate transaction or by a person reasonably believed by the licensee to be reliable
- To show or search for properties without compensation

**THIS DISCLOSURE PAMPHLET IS NOT A CONTRACT.**

**The Licensee anticipates compensation to be paid by** \_\_\_\_\_ **buyer/lessee,** _X_ **seller/lessor, or** \_\_\_\_\_ **both to the real estate brokers in the real estate transaction.**

I understand and acknowledge receiving and reading this pamphlet on the type of relationships I may have with the real estate Licensee (including the broker).

I understand and acknowledge that _Mark H._ (Licensee) of \_\_\_\_\_ _Jack White Commercial_ (company) will be working with me under the following relationship:

\_\_\_\_\_ Specific Assistance without Representation

\_\_\_\_\_ Representing the Seller/Lessor only (may assist Buyer/Lessee)

_X_ Representing the Buyer/Lessee only (may assist Seller/Lessor)

\_\_\_\_\_ Under preauthorized Neutral Licensee (attached "Waiver of Right to Be Represented")

Date: _8/28/07_   Time: _3:00pm_   [signature]

Date: \_\_\_\_\_   Time: \_\_\_\_\_

Date: _8/28/07_   Time: _3:00pm_   [signature] Mark H.
Real Estate Licensee

_Jack White Company_
Real Estate Company

# THIS DISCLOSURE PAMPHLET IS NOT A CONTRACT

08-4145 (Rev. 06/06)    -2-